UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

       Plaintiff,

v.

CITY OF FLINT, A. ESSIX, P.
SPAIN, MATT FLORIDA,
OPERATOR #2, OPERATOR #15,
OPERATOR #57, OPERATOR
#59, JOHN DOE, and JANE DOE,

       Defendants.

_____/

Case No. 2:22-cv-11351
District Judge Mark A. Goldsmith
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANT CITY OF FLINT'S MOTION TO DISMISS (ECF No. 28)
## AND
## *SUA SPONTE* DISMISS THE CLAIMS AGAINST THE OTHER CITY
## DEFENDANTS
## AND
## TO GRANT IN PART AND DENY IN PART
## DEFENDANT MATT FLORIDA'S MOTION TO DISMISS (ECF No. 27)
## AND
## TO DENY
## PLAINTIFF'S MOTION FOR LEAVE TO FILE
## A SECOND AMENDED COMPLAINT (ECF No. 33)[1]

_____

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

I.      Introduction

This is a civil rights case under 42 U.S.C. § 1983.  Plaintiff Gregory Hardy (Hardy), proceeding *pro se*, is suing the City of Flint (the City), A. Essix (Essix), P. Spain (Spain), Operator #2, Operator #15, Operator #57, Operator #59, John Doe, Jane Doe, (together "the City Defendants"),[2] and Matt Florida (Florida), claiming that he has been deprived of his First, Fourth, Eighth, and Fourteenth Amendment rights based on events that took place in June of 2022.  (ECF No. 16). Florida and the City now separately move to dismiss the complaint based on asserted immunities and for failure to state a claim.  (ECF Nos. 27, 28).  The motions are fully briefed.  (ECF Nos. 29, 30, 31, 32).  Hardy has also moved for leave to file a second amended complaint, (ECF No. 33), which is also fully briefed, (ECF Nos. 34, 35, 36, 37).  Pretrial proceedings have recently been referred to the undersigned.  (ECF No. 40).

For the reasons that follow, the undersigned RECOMMENDS that the City's motion to dismiss be GRANTED, that the remaining City Defendants be DISMISSED *SUA SPONTE*,[3] that Florida's motion to dismiss be GRANTED IN

---

[2] To date, Essix, Spain, Operator #2, Operator #15, Operator #57, Operator #59, John Doe, and Jane Doe have not been served.

[3] In the alternative, Hardy could be given the opportunity to respond or amend the complaint as to the remaining City Defendants (Essix, Spain, Operator #2, Operator #15, Operator #57, Operator #59) before their dismissal, as will be explained.

2

PART and DENIED IN PART, and that Hardy's motion for leave to amend be

DENIED.  If these recommendations are adopted, the case will proceed against

Florida on Hardy's substantive due process claim.

## II.     Background

Hardy filed his initial complaint on June 17, 2022.  (ECF No. 1).  He filed an

amended complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B)

on October 20, 2022, before any defendants had answered or otherwise responded

to the original complaint.  (ECF No. 16).  The amended complaint governs and

contains the following allegations, which are presumed true when considering a

motion to dismiss.

On June 24, 2022, Hardy made an emergency 911 call to the Flint Police

Department regarding a "gunman" on his property, who was Hardy's neighbor.

(ECF No. 16, PageID.101).[4]  Essix, a City police officer, arrived on the scene and

Hardy gave Essix a statement, explaining that earlier that morning his neighbor

threatened his dog and then, pointing a semi-automatic machine gun at Hardy's

face, told Hardy "I will kill you and your mf dog."  (*Id.*).  Essix was rude to Hardy,

---

[4] In his original complaint, Hardy complained of a gunman present on his property
earlier that month.  (ECF No. 1).  He alleged that the 911 operator never
dispatched an officer in response to his call.  (*Id.*).  Hardy has not made this
allegation a part of his amended complaint, and amended pleadings may not
incorporate a prior pleading by reference.  E.D. Mich LR 15.1.

questioning his statements and interrupting him, and then went to the neighbor's house. (*Id.*).  Essix told the neighbor that he would not arrest him, stating that it was Hardy's word against the neighbor's. (*Id.*).  Essix also refused to acknowledge Hardy's complaint regarding possible child abuse on the part of his neighbor. (*Id.*, PageID.102).

Essix spoke to Hardy's neighbor for 20 minutes, laughing and talking, and then returned to Hardy, telling Hardy that the neighbor did not have a gun, but rather a black baseball bat. (*Id.*).  Essix then left the scene, and immediately afterward the neighbor threatened Hardy and his dog again.  Hardy then called 911 again "because the gunman continued his threats and [drove] his pick-up truck across [Hardy's] front yard[,] deliberately burning the grass with his tires." (*Id.*).  Hardy made subsequent 911 calls, speaking to Operators #2, #15, #57, and #59.  However, no police officers ever came to his residence, despite assurance from each Operator that police were on their way. (*Id.*).

Later that day, Florida, an agent with Child Protective Services became involved. (*Id.*, PageID.103).  Florida called Hardy regarding Hardy's child abuse complaint, and Hardy offered him a video from his doorbell camera showing children being abused by his neighbor in front of his house. (*Id.*, PageID.103-104).  Florida assured Hardy that his identity would not be revealed to the neighbor, but Florida then went to the neighbor's house and showed him and his girlfriend the

video.  (*Id*., PageID.104).  This resulted in the neighbor threatening to kill Hardy
and his dog and burn his house down because of the child abuse report.  (*Id*.).

Two days later, on June 26, 2022, Hardy placed another 911 call due to the
same neighbor's continued threats and harassment.  (*Id*., PageID.102).  That time,
Spain, a City police officer, arrived and took a statement from Hardy.  (*Id*.,
PageID.103).  Spain then went next door to speak to the neighbor; their
conversation lasted 20 to 30 minutes and was overly friendly according to Hardy.
(*Id*.).  Spain then returned to Hardy's residence and allowed the neighbor to enter
Hardy's property, standing by as Hardy and his neighbor exchanged words.  They
had a dispute over the ownership of the doghouse in Hardy's side yard, and Spain
told the neighbor that he could take the doghouse from Hardy's property.  (*Id*.).
Spain later corrected himself that the doghouse belonged to Hardy, but only after
the neighbor had left the property.

### III.    Standard for Dismissal

When deciding a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), the Court must "construe the complaint in the light most favorable to
plaintiff and accept all allegations as true."  *Keys v. Humana, Inc*., 684 F.3d 605,
608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to relief that is plausible
on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## V.     Analysis

### A.     Failure to State a Claim against City Defendants

#### 1.     First Amendment

The City argues that Hardy's complaint should be dismissed because he has failed to plead a constitutional violation.  Regarding his First Amendment claim, the City argues that Hardy "alleges no facts to support a claim that his right to free exercise of religion, speech or assembly or any other First Amendment right has been violated."  (ECF No. 28, PageID.212).  Hardy argues that he has suffered retaliation based on his status as a registered sex offender, in the form of City defendants' false and misleading statements regarding his complaint against his neighbor, his repeated and unfruitful 911 calls to the defendant Operators, and the actions of City officers Essix and Spain.  (ECF No. 30, PageID.233).

In order to state a First Amendment retaliation claim, Hardy must allege "(1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights."  *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006) (citations omitted).

7

The City asserts that Hardy's stated claim, as clarified in his response, fails to meet the first required element of a retaliation claim. The undersigned agrees. First Amendment protection only applies to conduct that is expressive. This protection goes beyond the written or spoken word, but could not be said to extend to Hardy's inclusion on a sex offender registry, which the City notes is mandated by state law. As such, Hardy has not stated a plausible First Amendment retaliation claim with respect to being on the sex offender registry against the City or any of the City Defendants.

As to Hardy's First Amendment claim based on his right to place 911 calls, courts have assumed for the sake of argument that this qualifies as protected activity under the First Amendment. *See, e.g.*, *Scheffler v. Lee*, 752 F. App'x 239, 253 (6th Cir. 2018); *Hall v. Cnty. of Genesee*, No. 14-11133, 2014 WL 1652333, at *2 (E.D. Mich. Apr. 24, 2014). However, Hardy "fails to identify any adverse action resulting from his 911 call," *Hall*, at *2, which is required to make out a First Amendment claim. As the Court in *Hall* put it:

> He does not allege that police and emergency personnel failed to respond to his 911 call because he called 911. Likewise, it would be absurd to argue a causal connection between Plaintiff's 911 call and the alleged failure of police to respond. That is, Plaintiff does not allege that his 911 call caused police and emergency personnel to fail to respond. The court fails to see any basis upon which Plaintiff may maintain a First Amendment claim.

*Id*.

8

Further, Hardy's treatment by Essix and Spain does not amount to "adverse action . . . that would deter a person of ordinary firmness from continuing to engage in that conduct[,]" nor did it deter him from placing future 911 calls. Thus, even reading Hardy's complaint in the light most favorable to him, he has not stated a First Amendment retaliation claim against the City, Essix, Spain, Operator #2, Operator #15, Operator #57, or Operator #59.

### 2.    Fourth Amendment

As to Hardy's Fourth Amendment claim, the City contends that he "alleges no facts to support a claim suggesting that he was subject to any unreasonable search or seizure, or that any warrant was issued in this case." (ECF No. 28, PageID.212). Read most favorably, Hardy's amended complaint alleges that when Spain allowed Hardy's neighbor to enter Hardy's property, this trespass constituted an unlawful search and/or seizure.

The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.

> This text protects two types of expectations, one involving "searches," the other "seizures." A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent

9

of the Government or with the participation or knowledge of any governmental official."

*United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (BLACKMUN, J., dissenting)) (internal footnotes omitted).

Recently, the Supreme Court has expanded, or "reinvigorated," an approach to the Fourth Amendment that ties the search doctrine to common-law trespass. *See United States v. Miller*, 982 F.3d 412, 432 (6th Cir. 2020) (citing *United States v. Jones*, 565 U.S. 400 (2012)). However, a "search" still must take place in order for an unlawful search to have occurred. *Miller*, 982 F.3d at 433. Here, there is no allegation or plausible inference that Spain allowing Hardy's neighbor, i.e., the gunman, to briefly enter his property constituted a search or infringed upon Hardy's "reasonable expectation of privacy." *See generally Miller*, *Jones*, *Jacobsen*.

Furthermore, as the City points out, there can have been no unlawful seizure under the Fourth Amendment, because nothing of Hardy's is alleged to have been seized, including the doghouse over which ownership was disputed. Overall, Hardy has not made out a viable Fourth Amendment claim against the City, Essix, Spain, Operator #2, Operator #15, Operator #57, or Operator #59.

### 3. Eighth Amendment

Regarding his Eighth Amendment claim, Hardy asserts in the amended

10

complaint that "Cruel and Unusual Punishment [occurred] because each of the defendant[]s deliberately sought harm against [him] where clearly established rights were binding." (ECF No. 16, PageID.105). But as the City points out, Eighth Amendment causes of action are limited to "criminal punishments." (ECF No. 28, PageID.213 (citing *Ingraham v. Wright*, 430 U.S. 651, 668-69, (1977))). Hardy was not charged, arrested, detained, or incarcerated during the events discussed to in the amended complaint. He therefore cannot state a claim under the Eighth Amendment against any of the City Defendants.

### 4. Fourteenth Amendment

As his final claim against City Defendants, Hardy asserts what is probably best understood to be a substantive due process claim under the Fourteenth Amendment. In response to the City's motion to dismiss, Hardy clarifies that the City abused its power; ignored its affirmative duty to protect Hardy from the "special danger" of his neighbor, the gunman, resulting in a "state created danger;" and made him more vulnerable to danger by assuring him that police were on the way when they were in fact not. (ECF No. 30, PageID.233-235).

Hardy's Fourteenth Amendment claim is foreclosed by the Supreme Court's decision in *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). There, the Supreme Court found that the Fourteenth Amendment does not grant an entitlement to government assistance, and therefore, "it follows that the

State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id*. at 196-197. "As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 197.

Hardy contends that he faced a "special danger" of which defendants were aware thus creating a "special relationship" between them that warranted further police intervention, citing *Martinez v. State of Cal.*, 444 U.S. 277, 285 (1980). But this interpretation of special relationships between individuals and state officials is inconsistent with *DeShaney*, where as Justice Blackmun explained in dissent, the majority found no special danger or relationship existed even where a four-year-old child was a "[v]ictim of repeated attacks by an irresponsible, bullying, cowardly, and intemperate father, and abandoned by respondents who placed him in a dangerous predicament and who knew or learned what was going on, and yet did essentially nothing except . . . dutifully recorded these incidents in [their] files." *DeShaney*, at 213 (BLACKMUN, J., dissenting) (internal quotation marks omitted).

The Supreme Court in *DeShaney* explained:

Several of the Courts of Appeals have read this language [from *Martinez*] as implying that once the State learns that a third party poses a special danger to an identified victim, and indicates its willingness to protect the victim against that danger, a "special relationship" arises between State and victim, giving rise to an affirmative duty, enforceable through the Due Process Clause, to render adequate

protection.

*Id*. at 197 n.4 (citing cases).

The Sixth Circuit has only found a special relationship to exist when the state restrains an individual by placing them in involuntary custody.  *See Cartwright v. City of Marine City*, 336 F.3d 487, 492 (6th Cir. 2003); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 910 (6th Cir. 1995).  That did not happen here.

Hardy has also not pled facts that would invoke the related "state-created danger" doctrine.

> To show a state-created danger, plaintiff must show: 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright*, 336 F.3d at 493.

The City and its officers are not liable for placing Hardy in state-created danger because they did not place Hardy at increased risk, nor should they have known that their actions would have done so.  In *Tanner v. Cnty. of Lenawee*, 452 F.3d 472, 474 (6th Cir. 2006), the plaintiffs placed a 911 call to report a drunk and angry individual at their door.  Police arrived at the scene as the individual was pulling his car out of the driveway, which caused him to pull back into the driveway.  *Id*.  He then forced his way into the residence and shot three victims,

13

killing one, before killing himself. *Id*. The surviving victims brought suit against

the responding officers and the County Sheriff under the Fourteenth Amendment.

The Sixth Circuit in *Tanner* found that even if the officers had arrived at the

scene and done nothing further, potentially having "trapped [the gunman] in the

driveway when he was otherwise leaving" as the plaintiffs claimed, the plaintiffs

had failed to establish a state-created danger. *Id*. at 478. The Sixth Circuit went on

to explain that

> [t]he [plaintiffs'] argument fails for two reasons. First, the state-
> created-danger exception has never been extended to cover situations
> where the police simply respond to the scene of a 911 call (including
> pulling into the driveway). [The officers] were dispatched to the
> [plaintiffs'] home because the [plaintiffs] called 911 and were in need
> of police assistance. In attempting to protect the family, the officers
> drove to the scene and entered the driveway as soon as they identified
> the correct address. From a policy perspective, imposing liability on
> the officers for acting in this manner would dissuade the police from
> responding expeditiously to 911 calls.

*Id*. at 478-79. The defendants were also not liable because it was not established

that they "knew or should have known that [their] actions specifically endangered"

the plaintiffs. *Id*. at 479-480 (citing *Cartwright*, 336 F.3d at 493).

The Sixth Circuit also discussed its decision in *May v. Franklin Cnty. Bd. of*

*Comm'rs*, 59 F. App'x 786 (6th Cir. 2003). In *May*, an unpublished decision, the

Sixth Circuit held that a state-created-danger claim survived when officers

responded to a 911 call, knocked on the door, looked in the windows, and left the

scene, which "emboldened" the attacker within the house due to his diminished

14

fear of arrest.  *Tanner*, 452 F.3d at 479 (summarizing the facts of *May*).

Similarly to *May*, Hardy argues in his response that the operator defendants "assured Hardy that police were in fact on the way[, which] would render an individual more vulnerable to danger, because Hardy believed that officers were on the way."  (ECF No. 30, PageID.235).  He alleges that after Essix left his residence, he "remember[s] speaking to the Defendant[]s Operators #2, #15, #59, and #57 . . . because police never came where each of these defendants assured [him] that police were on the way."  (ECF No. 16, PageID.102).  Even reading into the amended complaint Hardy's argument that the operators' false assurances left him vulnerable, there are no factual allegations supporting the inference that these calls made him *more* vulnerable than had he not placed the calls.  Hardy's neighbor was not alleged to have known that the police were not responding to Hardy, which could otherwise have emboldened him, and Hardy is not said to have done anything differently that day because he thought police were again on the way.  Thus, under governing Sixth Circuit authority, Hardy has not stated a substantive due process claim under the Fourteenth Amendment against the City Defendants.

### B.  *Monell* Claim

#### 1.  Overview

The City argues that Hardy has not pled a valid claim of municipal liability against it because there are no underlying constitutional deprivations and because it

is not liable for the actions of City employees.

Municipalities cannot be held liable under § 1983 solely for the acts of their agents; they are only accountable under that statute for their own conduct. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "When suing a municipality . . . for constitutional violations under § 1983, a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.' " *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). "A plaintiff must show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred because of the execution of that policy." *Baynes v. Cleland*, 799 F.3d 600, 620 (6th Cir. 2015) (quotation marks and citation omitted). "To show the existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations." *Id*.

"If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

2.      Discussion

The City argues that Hardy has not alleged "legislative enactment or official

16

policy, does not point to any decision by an official with policymaking authority, nor does he identify a pattern of tolerance or acquiescence of federal violations." (ECF No. 28, PageID.207).  In response, Hardy argues that there was a "clear and persistent pattern" of unconstitutional activity by City employees; notice or constructive notice by the City, and tacit approval by the City of such activity. (ECF No. 30, PageID.235-236 (citing *Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996)).  He also argues that the City knew he could be harmed due to his repeated 911 calls and that it denied him protection through its inaction.  (*Id*., PageID.236).

Hardy's *Monell* claim against the City must fail because, as discussed above, there is no underlying constitutional deprivation that could be attributed to the City.  *See Watkins*, 273 F.3d at 687.  Furthermore, if there had been a constitutional deprivation by one or more of the individual City Defendants, the City would not be liable for that deprivation under these allegations.

As to Hardy's first theory of municipal liability, he has failed to identify other alleged instances of the conduct that he complains of in order to establish a pattern of such activity.  In fact, on both days that he placed 911 calls, officers responded to these calls and arrived at his residence.  Although an officer did not respond to each individual call, it cannot be said that there is a "clear and persistent pattern" of inaction.  Hardy has also not alleged actual and constructive notice by

17

any decisionmaker within the City, only to the individual officers and operators that are named as defendants in this matter. Finally, there are no allegations that would support his claim of tacit approval on the part of the City. Tacit approval must be shown by "deliberate indifference in [the City's] failure to act" such that it "can be said to amount to an official policy of inaction." *Doe v. Claiborne Cnty.*, 103 F.3d at 508. This "does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to Hardy's claims. *Id.* Hardy has at most alleged some oversights as to the police responding to his 911 calls, but there are no allegations that this practice was obviously deliberate on the part of the City, because there were no City decisionmakers involved with Hardy's treatment.

Hardy's second theory of liability essentially restates the first; that the City had sufficient knowledge of Hardy's situation and refused to act. Hardy cites *Cuffy v. City of New York*, 69 N.Y.2d 255 (1987), a New York Court of Appeals case in which the court acknowledged that state's "special duty" exception to the general rule that a municipality is not liable for police inaction. In *Cuffy*, a lieutenant made a "promise" to the plaintiffs that something would be done regarding threats they faced from their downstairs tenants. *Id.* at 258-259. Nothing was done, and the plaintiffs were attacked by their tenants, suffering severe injuries. *Id.* The court in *Cuffy* found that while a special duty had been

18

created by the lieutenant's promise, and while the City of New York could be liable for injuries arising out of the unfulfillment of said promise, the plaintiffs' claim was defeated because their reliance on that promise did not extend to the following day, where they would have known that the promise had gone unfulfilled.  The promise was therefore not "causally related" to the incident that later occurred.

*Cuffy* is a state court case applying New York law and does not govern Hardy's federal claims arising in Michigan.  However, even if were governing, Hardy's claim has a similar problem to the one the *Cuffy* plaintiffs faced.  There is no causal connection between the City's failure to send an officer and any harm that Hardy suffered thereafter.  This is mainly because Hardy has not alleged a constitutional harm at all.  But further, Hardy has not alleged that he took any specific action in reliance on the City's promise, or that such an action is the reason that he suffered a harm.  Therefore, his *Monell* claim against the City must fail.

### C.    *Sua Sponte* Dismissal of the other City Defendants

The individual City Defendants—Essix, Spain, Operator #2, Operator #15, Operator #57, and Operator #59—have not been served nor have they responded to the complaint.  "Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the

opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). "Nevertheless, a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.*

As explained above in the context of underlying constitutional violations that Hardy alleges the City is liable for, Hardy has not stated a colorable claim against any of the individual City Defendants. In a similar case, *Hayes v. City of Detroit*, No. 08-CV-10179, 2010 WL 597490 (E.D. Mich. Feb. 17, 2010), the district court found that *sua sponte* dismissal of two City of Detroit police officers was appropriate where the plaintiff asserted a "failure to assist" claim. There the plaintiff alleged that after she was shot and called 911, two officers were dispatched to the scene, but left after having difficulty locating the plaintiff and did not return upon being dispatched to her address a second time. *Id.* at *3. Citing *DeShaney*, the district court reasoned that the plaintiff's claim was "devoid of merit," making *sua sponte* dismissal of the officers appropriate, because the officers did not affirmatively harm the plaintiff. *Id.* at *4. And as here, there was no "special relationship" nor any "state-created danger" on the part of the officers. *Id.* at *5.

Here, like the municipal defendant in *Hayes*, the City argues that there was no underlying constitutional violation on which to premise municipal liability. The City made this argument in it motion to dismiss to which Hardy had an opportunity to respond. As such, Hardy had notice of the City's argument as well as the opportunity to explain why he believed that he stated a claim against the City Defendants who have yet to respond to the complaint. Because he had notice that these claims were subject to challenge, and because his claims are ultimately "devoid of merit" for the reasons outlined above, the undersigned recommends that they be dismissed *sua sponte*.[5]

Additionally, Hardy's amended complaint contains no allegations against John Doe, Jane Doe, or any unnamed individuals. Thus, dismissal of John and Jane Doe is recommended as well.

### D.    Claims against Florida

#### 1.    Absolute Immunity

Florida first argues that he is entitled to absolute immunity as to claims against him in his official capacity. This is correct, because Florida is an employee of the State of Michigan, against which monetary suits are barred by the Eleventh Amendment. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir.

---

[5] If this recommendation is not adopted, the undersigned alternatively recommends that under *Apple v. Glenn*, Hardy be directed to file a proposed amended complaint addressing the flaws in his claims against the individual City Defendants.

2010) (quoting *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009))

("[A]n official-capacity suit against a state official is deemed to be a suit against

the state and is thus barred by the Eleventh Amendment, absent a waiver.").

Though suits against state employees for injunctive relief do not suffer the same

problem, *see Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir.

2014); *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012), Hardy seeks

only monetary damages.

    Florida also argues that he is entitled to absolute immunity in his individual

capacity for actions taken "in [his] capacity as a legal advocate." (ECF No. 27,

PageID.177 (quoting *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*,

640 F.3d 716, 725 (6th Cir. 2011) (internal quotation marks omitted))). The Sixth

Circuit has held that "that under certain circumstances, social workers are entitled

to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000).

Absolute immunity for social workers falls under the umbrella of absolute

prosecutorial immunity. *Id*. Social workers "are absolutely immune only when

they are acting in their capacity as *legal advocates*—initiating court actions or

testifying under oath—not when they are performing administrative, investigative,

or other functions." *Id*. at 775 (emphasis in original).

    Florida argues that based on subsequent Sixth Circuit case law, *Pittman* and

*Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001), absolute

immunity extends to allegations related to Florida's investigation of Hardy's

neighbors during which he disclosed that the video he received originated from

Hardy.[6]  But those cases involved social workers making false or misleading

representations to juvenile courts based on bad investigations.  "[C]onduct

pursuant to a social worker's investigatory functions are not entitled to absolute

immunity[.]"  *Pittman*, at 726 (citing *Achterhof v. Selvaggio,* 886 F.2d 826, 830

(6th Cir.1989) (denying absolute immunity to a social worker's decision to initiate

and continue an investigation of possible child abuse)).  These cases, and many

others, distinguish *Achterhof* where a social worker's inadequate investigation is

used to initiate or further a juvenile court proceeding.  Here, the complaint is

limited to Florida's actions during his investigation and the harm arising from his

actions.  Therefore, *Achterhof* governs.  Social workers "acting in their

investigative or administrative capacities merit only qualified immunity."

*Achterhof*, 886 F.2d at 829 (quoting *Windsor v. The Tennessean,* 719 F.2d 155, 164

(6th Cir. 1983)).  Thus, Florida is not entitled to absolute immunity in his

individual capacity.

### 2.    Qualified Immunity

"Official conduct not entitled to absolute immunity can at most enjoy the

---

[6] Hardy's response states that Florida also told the neighbors that Hardy was a registered sex offender.  (ECF No. 29, PageID.220).  This allegation was not made in the amended complaint and therefore will not be considered.

protection of qualified immunity." *Achterhof*, 886 F.2d at 829.  Florida argues that

even if he is not entitled to absolute immunity, he is entitled to qualified immunity

because he has not violated a clearly established constitutional or federal statutory

right.  (ECF No. 27, PageID.179 (citing *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)

and *Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam))).

Qualified immunity "is an immunity from suit rather than a mere defense to

liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It gives officials

"breathing room to make reasonable but mistaken judgments and protects all but

the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*,

571 U.S. 3, 6 (2013) (punctuation modified).  After a defending official initially

raises qualified immunity, the plaintiff bears the burden of showing that the official

is not entitled to qualified immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th

Cir. 2013).

When determining whether an official is entitled to qualified immunity, the

Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the

light most favorable to the plaintiff, [it] determine[s] whether the allegations give

rise to a constitutional violation; and (2) [it] assess[es] whether the right was

clearly established at the time of the incident." *Id*. at 472.  The steps may be

considered in either order, so "[i]f the court concludes that no constitutional

violation has occurred, there is no need to address whether the alleged right was

clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

Hardy alleges that by showing his neighbors (the gunman and the gunman's girlfriend) the video that he sent Florida, Florida exposed Hardy to danger because the video was clearly taken from Hardy's perspective. (ECF No. 16, PageID.104-105). This allegedly violated Hardy's First, Fourth, Eighth, and Fourteenth Amendment rights. (*Id.*). In his response, Hardy provides analysis in support of his First Amendment claim as well as his procedural and substantive due process claims under the Fourteenth Amendment.[7] (ECF No. 29). Each claim is considered below.

### a.    First Amendment Retaliation

As to Hardy's First Amendment retaliation claim against Florida, as stated above, he must plead three elements: "(1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's

---

[7] Hardy did not discuss his Eighth Amendment claim against Florida in his response to Florida's motion. As such, he has waived any arguments in support of the claim and it is deemed to be abandoned. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999). The same is true of Hardy's Fourth Amendment claim, which Hardy only briefly addresses but does not analyze.

constitutional rights." *Adair*, 452 F.3d at 492 (citations omitted).

Hardy simply asserts that Florida has violated his clearly established First Amendment right to be free of retaliation.  However, Hardy did not plead that his act, calling Child Protective Services, motivated Florida to expose his identity to his neighbors.  He instead attributes this the exposure of his identity to gross negligence on the part of Florida.  (ECF No. 29, PageID.224).  While this may be true, it does not satisfy the third element of a retaliation claim.  Thus, this claim should not survive Florida's defense of qualified immunity.

> b.     Substantive Due Process[8]

Regarding Hardy's substantive due process claim, Florida says that this claim also fails because Florida's actions do not "shock the conscience[.]"  (ECF No. 27, PageID.186 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998))).  To engage in such activity, a government actor must commit "the most egregious official conduct, conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency."  *Doe v. Miami Univ.*, 882 F.3d 579, 599 (6th Cir. 2018) (alteration in original) (internal quotation marks omitted).

As explained above, defendants are not liable for due process violations

---

[8] Hardy's procedural due process claim should be dismissed because it is encompassed by his substantive due process claim.  *See Lipman*, 974 F.3d at 740.

where they simply fail to protect a plaintiff from an outside danger. But there is an

exception to this general rule in the instance of a state-created danger, which

occurs where there is

> 1) an affirmative act by the state which either created or increased the
> risk that the plaintiff would be exposed to an act of violence by a third
> party; 2) a special danger to the plaintiff wherein the state's actions
> placed the plaintiff specifically at risk, as distinguished from a risk that
> affects the public at large; and 3) the state knew or should have known
> that its actions specifically endangered the plaintiff.

*Cartwright*, 336 F.3d at 493 (6th Cir. 2003).

Hardy has adequately pled each of these elements against Florida to survive

a motion to dismiss. He alleges that Florida "assured" him that his identity as the

source of the video would not be revealed, but then showed the same video to

Hardy's neighbors that was clearly taken by Hardy. (ECF No. 16, PageID.103-

105). This resulted in the male neighbor (the gunman) threatening to kill Hardy

and his dog and burn his house down. (*Id.*). The affirmative act of showing

Hardy's video to the individuals he reported, without editing, increased the risk

that Hardy would suffer violence at the hand of his neighbor. This plausibly

created a special danger that applied specifically to Hardy. And it is easily inferred

that Florida knew or should have known that this act would point back to Hardy

and place him in danger. As for the requirement that Florida's act must shock the

conscience, it has been explained that "[the] knowledge prong is synonymous with

the requirement that the state official's conduct must 'fairly be said to shock the

27

contemporary conscience.' " *Lipman v. Budish*, 974 F.3d 726, 744 n.7 (6th Cir. 2020) (quoting *Lewis*, 523 U.S. at 847 n.8).

Because Florida's conduct could be protected by qualified immunity, the analysis must proceed one step further. Florida can only be liable where Hardy's substantive due process rights are clearly established. In the Sixth Circuit, they are.

In *Lipman v. Budish*, 974 F.3d 726 (6th Cir. 2020), a child suffered extensive physical abuse from her biological mother, including repeated burnings and beatings. Social workers intervened, but the plaintiffs (the child's legal custodian and estate representative) sued the county and three state social workers for failing to prevent the child's repeated abuse. All of the plaintiffs' claims were dismissed at the district court level, but on appeal, the Sixth Circuit found that the plaintiffs plausibly alleged a claim under the state-created danger doctrine for "repeatedly interviewing [the child] about her abuse in the presence of her alleged abusers[.]" *Id*. at 731.

The Sixth Circuit noted that it must "draw all reasonable inferences in favor of Plaintiffs when assessing whether the facts in their complaint demonstrate a state-created danger." *Id*. at 746. It then found that "interviewing [the girl] in front of her alleged abusers and asking about the source of her injuries increased her risk of further abuse is just such a reasonable inference." *Id*. And in finding

28

that these allegations satisfied the requirements of the state-created-danger

exception, it rejected the defendants' argument that the exception "does not extend

to cases where the state only created a motive for private violence, as opposed to a

heightened means for violence." *Id*. The Sixth Circuit also rejected the argument

that "the requirement to privately interview [the child] cannot give rise to a

constitutional duty." *Id*.

When deciding *Lipman*, the Sixth Circuit relied on two of its prior cases:

*Kallstrom v. City of Columbus*, 136 F.3d 1055, 1059 (6th Cir. 1998) and *Nelson v.

City of Madison Heights*, 845 F.3d 695 (6th Cir. 2017). In *Kallstrom*, a copy of

personnel records from the police department was turned over to defense counsel

in a criminal case involving undercover officers; the court there found that this

violated the undercover officers' substantive due process rights after the

information made its way into the hands of gang members. 136 F.3d at 1059-64.

In *Nelson*, a teenager who was caught with a bag of marijuana offered to be an

informant to help police arrest her dealer in order to avoid arrest. 845 F.3d at 697-

98. A police officer then in one manner or another "out[ed]" the teenager as the

informant to the dealer, which resulted in the teenager being kidnapped and

murdered just days later. *Id*. at 698-99. The court found that this amounted to

state-created danger and denied the officer qualified immunity. *Id*. at 699-700,

703.

29

The social workers in *Lipman* were also denied qualified immunity.  Relying on *Kallstrom* and *Nelson*, the Sixth Circuit stated that "the right to be free from such state-created danger was clearly established at the time of Defendants' actions."  *Lipman*, 974 F.3d at 750.

Courts are cautioned not to define clearly established law, for the purposes of qualified immunity, at a high level of generality.  *Mullenix v. Luna*, 577 U.S. at 12 (citation omitted).  Instead, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established."  *Id*. (internal quotation marks and citation omitted) (emphasis in original).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011).

Based on existing precedents, by exposing Hardy as the one who reported his neighbors to Child Protective Services in an obvious manner, Florida increased the risk of a danger that did not previously exist to Hardy.  This conclusion is compelled by the Sixth Circuit's decision in *Lipman*, in which a social worker increased the risk of danger to a child by interviewing her in front of her abusers.  Even in *Lipman*, the right had already been found to be clearly established, based in part on *Nelson*, in which a police informant's identity was exposed to her drug dealer leading to her murder.  Hardy's claim here is more analogous to the claim in *Nelson* than those in *Lipman*, and even when *Nelson* was decided, the right to be

30

free of this particular state-created danger was found to already be clearly established.  That right is clearly established here as well.  Therefore, Florida is not entitled to qualified immunity on Hardy's substantive due process claim.[9]

### D.    Hardy's Motion to Amend

Hardy has moved to file a second amended complaint, citing a "procedural error" in joining the defendants in this matter and the desire to add "new claim(s) against all" defendants.  (ECF No. 33, PageID.266-267).  The City and Florida argue that the motion should be denied because Hardy did not attach the second amended complaint or provide any notice as to the content of the amendment(s).  (ECF Nos. 34, 35).  In response, Hardy filed the proposed second amended complaint, (ECF No. 36), and the City filed a supplemental brief in opposition to Hardy's motion on the basis that his proposed amendment would be futile.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  Rule 15(a)(1) allows a party to amend its

---

[9] Florida may, of course, be entitled to qualified immunity on this claim at the summary judgment stage.  Entitlement to qualified immunity is more often established by summary judgment.  *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).  " 'It is often perilous to resolve a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Hart*, 951 F.3d at 635 (quoting *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016)).  At this stage, it is merely plausible when reading the complaint in the light most favorable to Hardy that Florida violated his clearly established constitutional right.

pleading once, as a matter of course, but only within 21 days of service of a

responsive pleading or Rule 12(b), (e), or (f) motion.  Rule 15(a)(2) allows that

other amendments may be made with the court's leave, which the court should

give freely when justice so requires.  The Supreme Court has instructed:

> In the absence of any apparent or declared reason – such as undue delay,
> bad faith or dilatory motive on the part of the movant, repeated failure
> to cure deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc. – the leave should, as the rules
> require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Riverview Health Inst. LLC v.*

*Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010).  Rule 15(a) creates a liberal

policy in favor of granting leave to amend and is meant to "reinforce the principle

that cases should be tried on their merits rather than the technicalities of

pleadings."  *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *see also Marks v.*

*Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (reversing the grant of a motion to

dismiss because the district court failed to properly consider claims alleged in a

pending motion for leave to amend).

   "Despite this policy, denial may be appropriate when there is 'undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc.' "

*Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman*, 371 U.S.

at 182).  "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.' "  *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

The proposed second amended complaint contains additional allegations regarding events on June 4, 2022 (contained in Hardy's original complaint) in which Hardy called 911 and the City failed to send an officer to his residence. (ECF No. 36, PageID.301).  Although Hardy may be attempting to properly consolidate this claim with the claims of his amended complaint, (ECF No. 16), this would be futile.  As explained above, the City's mere failure to intervene is not actionable, nor is there any valid claim against the 911 operators for failing to send an officer pursuant to a 911 call.  Other than this, the contents of the proposed second amended complaint are largely indistinguishable from those of the amended complaint.  That is to say, his claims in the proposed second amended complaint would be futile to adopt as to the City Defendants, and his substantive due process claim against Florida would remain the same.

Therefore, Hardy's motion for leave to amend the complaint is futile as to his claims against City Defendants.  It is also unnecessary as to his substantive due process claim against Florida.  Therefore, his motion to amend should be denied.

V.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that the City's motion to dismiss, (ECF No. 28), be GRANTED, that the individual City Defendants be DISMISSED *SUA SPONTE*, that Florida's motion to dismiss, (ECF No. 27), be GRANTED IN PART and DENIED IN PART, and that Hardy's motion for leave to file a second amended complaint, (ECF No. 33), be DENIED. If this Report and Recommendation is adopted, the only remaining claim will be Hardy's substantive due process claim against Florida under the Fourteenth Amendment.

Dated: April 12, 2023                    s/Kimberly G. Altman
Detroit, Michigan                        KIMBERLY G. ALTMAN
                                         United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

34

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 12, 2023.

s/Michael E. Lang
for CAROLYN CIESLA
Case Manager

35