UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

        Plaintiff,                              Case No. 22-cv-11351

vs.                                            HON. MARK A. GOLDSMITH

CITY OF FLINT et al.,

        Defendants.
_____/

# OPINION & ORDER
## (1) ACCEPTING IN PART AND DENYING IN PART RECOMMENDATIONS IN MAGISTRATE JUDGE'S REPORT & RECOMMENDATION (R&R) (Dkt. 41), (2) DENYING PLAINTIFF'S OBJECTIONS TO R&R (Dkt. 45), (3) GRANTING DEFENDANT CITY OF FLINT'S MOTION TO DISMISS (Dkt. 28), (4) DISMISSING SUA SPONTE DEFENDANTS ASSOCIATED WITH CITY, (5) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT (Dkt. 33), (6) SUSTAINING DEFENDANT FLORIDA'S OBJECTIONS TO R&R (Dkt. 43), AND (7) GRANTING DEFENDANT FLORIDA'S MOTION TO DISMISS (Dkt. 27)

Before the Court is Magistrate Judge Kimberly Altman's report and recommendation (R&R) (Dkt. 41) recommending that the Court (i) grant the motion to dismiss filed by Defendant City of Flint (Dkt. 28), (ii) sua sponte dismiss other Defendants related to the City, (iii) grant in part and deny in part Defendant Matt Florida's motion to dismiss (Dkt. 27), and (iv) deny Plaintiff Gregory Hardy's motion for leave to file a second amended complaint (Dkt. 33). Objections were filed by Florida (Dkt. 43) and Hardy (Dkt. 45).[1] For the reasons that follow, the Court (i) accepts in part and denies in part the recommendations in the R&R, (ii) denies Hardy's objections, (iii) grants the City's motion to dismiss, (iv) sua sponte dismisses other Defendants related to the City,

---

[1] Hardy also filed an earlier set of objections (Dkt. 42), but his later-filed objections include the same content contained in his earlier objections as well as additional arguments, and so the Court treats the later-filed objections as operative. The City filed responses to both of Hardy's filings. See 1st City Resp. to Pl. Obj. (Dkt. 44); 2d City Resp. to Pl. Obj. (Dkt. 46).

(v) denies Hardy's motion to file an amended complaint, (vi) sustains Florida's objections, and (vii) grants Florida's motion to dismiss.[2]

## I. BACKGROUND

The Court proceeds by discussing (i) Hardy's allegations and claims and (ii) the magistrate judge's recommendations as to each of the pending motions.

### A. Hardy's Allegations and Claims

Hardy brought this suit pro se against (i) the City, (ii) eight individuals allegedly employed by the City—City police officers A. Essix and P. Spain, four unnamed 911 operators, and an additional "John Doe" and "Jane Doe"—and (iii) Children's Protective Services agent Florida. See R&R at 3–5 (citing Am. Compl. (Dkt. 16)).[3] Hardy alleges that he called 911 on multiple occasions seeking assistance with a dispute Hardy had with his neighbor, but police officers either were unhelpful when they arrived at Hardy's residence or failed to show up at all. Id.

Hardy claims that, on June 24, 2022, his neighbor pointed a firearm at Hardy and threatened to shoot Hardy and Hardy's dog. Id. at 3 (citing Am. Compl. at PageID.101). Hardy called 911, and Essix arrived at Hardy's residence. Id. at 4. Essix spoke to Hardy's neighbor, but Essix refused to arrest the neighbor. Id. After Essix left the residence, Hardy alleges that his neighbor continued to threaten Hardy, prompting Hardy to make additional 911 calls to four different operators (all unnamed Defendants in this case)—but no police officers returned to Hardy's residence in response to those calls. Id.

---

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

[3] Hardy also initially sued an unnamed "dispatcher" and "supervisor"; these Defendants were terminated upon the filing of Hardy's amended complaint. The briefing before this Court does not identify the full names of Essix and Spain.

Hardy also made a report to Essix about his neighbor's alleged child abuse. Id. at 4–5. This report prompted a visit from Florida later on June 24, 2022. Id. According to Hardy's allegations:

> Florida called Hardy regarding Hardy's child abuse complaint, and Hardy offered him a video from [Hardy's] doorbell camera showing children being abused by his neighbor in front of his house. . . . Florida assured Hardy that his identity would not be revealed to the neighbor, but Florida then went to the neighbor's house and showed him and his girlfriend the video. . . . This resulted in the neighbor threatening to kill Hardy and his dog and burn his house down because of the child abuse report.

Id. (citing Am. Compl. at PageID.102–103).

Hardy alleges that, two days later, on June 26, 2022, he placed another 911 call in response to his neighbor's continued harassment, and Spain arrived to take Hardy's statement. Id. at 5. Spain spoke to Hardy's neighbor for 20 to 30 minutes and then returned to Hardy's residence with the neighbor. Id. Spain stood by as Hardy and his neighbor argued over who owned a doghouse in Hardy's yard, and Spain allegedly told the neighbor that he could take the doghouse, and then recanted once the neighbor had left the property. Id.

Hardy brought claims against the City and City-employed Defendants based on (i) the First Amendment, (ii) the Fourth Amendment, (iii) the Eighth Amendment, (iv) the Fourteenth Amendment, (v) and a theory of municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Id. at 7–16. The City and Florida each filed a motion to dismiss. Hardy also moved to amend his complaint. Id. at 33.

**B. City's Motion to Dismiss and Sua Sponte Dismissal of City-Employed Defendants**

The magistrate judge recommends that the Court grant the City's motion to dismiss and dismiss sua sponte the remaining City-employed Defendants. Id. at 7–21. In the magistrate

judge's view, Hardy has failed to state a constitutional claim against any of the Defendants associated with the City.[4]

The R&R also recommends that the Court sua sponte dismiss the individual City-employed Defendants—none of whom has been served or joined in the City's motion to dismiss—because "a district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Id. at 20 (quoting Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)); see also id. (citing Hayes v. City of Detroit, No. 08-cv-10179, 2010 WL 597490, at *3–*6 (E.D. Mich. Feb. 17, 2010) (dismissing sua sponte two police officers who allegedly failed to adequately respond to 911 call where Fourteenth Amendment claim was "devoid of merit")). The magistrate judge notes that Hardy had the opportunity to respond to the City's position that his claims against the City-employed Defendants were meritless, but he failed to establish that any of these claims have merit. Id. at 21. Further, his amended complaint contains no allegations against Defendants "John Doe" or "Jane Doe," so these claims should be dismissed as well. Id.

---

[4] The magistrate judge recommends finding that all of Hardy's constitutional claims against the City-related Defendants fail. Hardy's First Amendment retaliation claim fails because he has not plausibly alleged (i) that Hardy's statutorily required inclusion on a sex offender registry constituted retaliation by Defendants, or (ii) that he suffered any adverse action resulting from his 911 calls or his treatment by Essix or Spain. R&R at 7–9. Hardy's Fourth Amendment claim fails because there was no alleged unlawful seizure—including any seizure of the doghouse referenced in Hardy's complaint. Id. at 10. Hardy's substantive due process claim under the Fourteenth Amendment fails because (i) the state's failure to protect an individual against private violence does not violate the Due Process Clause, (ii) Hardy has not plausibly alleged any "special relationship" mandating police intervention, and (iii) Hardy has not plausibly alleged that Defendants increased his risk of harm such that the state-created-danger doctrine applies. Id. at 11–15. Hardy's Monell claim against the City fails because (i) there is no underlying constitutional deprivation undertaken by any City-employed Defendant, and, even if there were, (ii) Hardy has not plausibly alleged that the City should have been aware of a clear and consistent pattern of unconstitutional activity or tacitly approved of constitutional violations. Id. at 16–19.

4

### C. Florida's Motion to Dismiss

As to Florida, the R&R recommends that the Court grant his motion to dismiss as to Hardy's First Amendment retaliation claim, as Hardy has failed to plead that his allegedly protected act of calling Children's Protective Services motivated Florida to engage in the adverse action of exposing Hardy's identity to his neighbors. Id. at 25–26.

However, the R&R recommends denying Florida's motion to dismiss as to Hardy's state-created-danger claim because Hardy—by alleging that Florida showed Hardy's neighbor a video clearly taken by Hardy after assuring Hardy that his identity would be protected—has adequately pleaded the three elements of this claim:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

Id. at 26–28 (quoting Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003)).

Further, in the magistrate judge's view, Florida is not entitled to absolute immunity in his individual capacity because this immunity applies to a social worker only when that individual is acting as a legal advocate. Id. at 21–23. The magistrate judge also proposes that Florida is not entitled to qualified immunity on the state-created-danger claim because the constitutional right allegedly violated was clearly established. Id. at 28–31

### D. Hardy's Motion to Amend Complaint

The magistrate judge recommends that the Court deny Hardy's motion to amend his complaint because an amendment would be futile. Id. at 32–33 (citing Brown v. Chapman, 814 F.3d 436, 443 (6th Cir. 2016)). The magistrate judge finds that the allegations proposed in Hardy's purported second amended complaint either (i) are "largely indistinguishable" from allegations

5

already made or (ii) add further details to allegations from June 24, 2022 that do nothing to bolster the merit of claims that the magistrate judge already recommends dismissing. Id. at 33.

## II. ANALYSIS[5]

Hardy and Florida have both filed objections. The Court considers each set of objections in turn.

### A. Hardy's Objections

Hardy objects to the magistrate judge's recommendations as to (i) sua sponte dismissal of the individual City-employed Defendants, (ii) the denial of his motion to amend his complaint, and (iii) the dismissal of his Monell claim.

#### 1. Sua Sponte Dismissal

Hardy first objects "to the Court's Sua Sponte Dismissal of plaintiff's complaint [as to claims against City-employed Defendants] on the merits . . . ." Pl. Obj. at 3. He argues this "such Sua Sponte dismissals are not favored." Id. (citing Tingler v. Marshall, 716 F.2d 1109 (6th Cir. 1983); Martin v. Johnson, 471 F.2d 704 (6th Cir. 1973); Brown v. Strickler, 422 F.2d 1000 (6th Cir. 1970)). Hardy submits that his claims should remain open against the City-employed Defendants "until all [Defendants] have been served." Id. at 4.

Hardy has wholly failed to address the rationale for the R&R's recommendation that these Defendants be dismissed: that his claims against them lack merit. As aptly demonstrated by the R&R's caselaw, sua sponte dismissal is proper where claims are "devoid of merit." See Apple,

---

[5] The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). Absent a specific objection, the issue is waived. Willis v. Sullivan, 931 F.2d 390, 401 (6th Cir. 1991).

6

183 F.3d at 479; Hayes, 2010 WL 597490, at *3–*6. Hardy cites cases for the premise that "sua sponte dismissals are not favored." Tingler, 716 F.2d at 1110 (citing Brown, 422 F.2d; Martin, 471 F.2d). But, as the City correctly observes, see 1st City Resp. to Pl. Obj. at 2–4, "Tingler's requirement that a plaintiff be given the opportunity to amend does not apply to sua sponte dismissals for lack of jurisdiction" based on lack of merit, Apple, 183 F.3d at 479. Hardy has made no objection to the R&R's recommended findings that his claims against the City-employed Defendants under the First, Fourth, Eighth, and Fourteenth Amendment are meritless, and— without the benefit of an objection—the Court agrees with the magistrate judge's uncontroverted view. Sua sponte dismissal of Hardy's meritless claims is proper.

Hardy also submits that his claims against "John Doe and Jane Doe should remain until all [Defendant Operators] have been served because in Defendant's failure to respond to 911 calls are John Doe and Jane Doe [sic]." Pl. Obj. at 4. To the extent that Hardy suggests that his claims against John and Jane Doe are the same as his claims against the 911 operators, he still cannot overcome the hurdle that these claims are devoid of merit and so are properly dismissed. See Apple, 183 F.3d at 479. Hardy also fails to challenge the R&R's finding that Hardy has presented no allegations against these Defendants at all; he merely names them in his amended complaint and then fails to assert any facts as to their involvement in his suit. See R&R at 21; Am. Compl. The Court accepts the magistrate judge's recommendation to sua sponte dismiss these Defendants.

2. **Motion to Amend Complaint**

The R&R recommends a denial of Hardy's motion to amend based on the futility of his proposed amendments. Hardy argues that, to deny a motion to amend, "a court 'must' find at least some significant showing of prejudice to the opponent." Pl. Obj. at 4 (citing LRL Props. v. Portage Metro Hous. Auth., 55 F.3d 1097, 1104 (6th Cir. 1995); Moore v. City of Paducah, 790 F.2d 557

7

(6th Cir. 1986)). He submits that futility is an insufficient basis on its own to deny a motion to amend pleadings. Id. at 5.

As demonstrated by the City's authorities, see City Resp. to Pl. Obj. at 5, futility is a sufficient ground on which to deny a motion for leave to amend a complaint, see, e.g., Crawford v. Roane, 53 F.3d 750, 756 (6th Cir. 1995) (affirming denial of request to amend complaint to add new claim where "such a claim would be futile" without finding that defendants would be prejudiced by amendment). Hardy's cases do not contradict this position. LRL Properties, in fact, supports a denial of a request for leave to amend where—as is true here—"the infirmities of the original complaint are not dissipated by the amended complaint." 55 F.3d at 1104 (affirming denial of motion to amend complaint and taking no position on prejudice, notwithstanding dissent's position that defendants would not have been prejudiced by amendment) (punctuation modified). Moore is inapposite; in that case, the district court's denial of the plaintiff's request to amend the complaint was based on untimeliness, not futility. 790 F.2d at 562 (reversing denial of motion to amend where district court found that defendant would suffer "relatively light prejudice").

Hardy also states: "Defendants alleged 'futility,' and now the court assumes." Pl. Obj. at 5. To the extent that Hardy means to suggest that his proposed amended complaint is not futile, he has provided no explanation for how the new allegations he purports to add to his claims bolster the merits of those claims. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." Walsh v. Doner Int'l Ltd., Inc., 336 F.R.D. 139, 142 (E.D. Mich. 2020) (punctuation modified). The Court denies Hardy's objection and accepts the R&R's recommendation to deny Hardy's motion to amend his complaint.

### 3. <u>Monell</u> Claim

Hardy also objects to the recommended finding that the City is not liable under <u>Monell</u>, arguing that he properly alleged that agents of the City violated Hardy's constitutional rights by pleading that there was "a municipality [sic] policy or custom of inaction(s)" and that the City's "policy or custom was the moving force behind the violations." Pl. Obj. at 7 (citing Am. Compl.).

Hardy's arguments as to municipal policies and customs are irrelevant unless there is an underlying constitutional violation for which the City is potentially responsible; "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." R&R at 16 (quoting <u>Watkins v. City of Battle Creek</u>, 273 F.3d 682, 687 (6th Cir. 2001)). Hardy does not challenge the R&R's recommended finding that the Court should dismiss his claims against the City-employed Defendants. Having failed to plausibly allege any underlying constitutional violation committed by an individual Defendant employed by the City, Hardy has no viable <u>Monell</u> claim against the City itself. See <u>Watkins</u>, 273 F.3d at 687.[6] The Court denies Hardy's objection on his <u>Monell</u> claim, and it accepts the R&R's recommendation to grant the City's motion to dismiss.

---

[6] Hardy also suggests that he can rely on his claim against Florida as a basis for his <u>Monell</u> claim against the City. <u>See</u> Pl. Obj. at 7. For the reasons discussed later in this opinion, the Court finds that Hardy has no surviving claim against Florida, either. Regardless, even if Hardy had a surviving claim against Florida, Florida is an employee of Michigan's Children's Protective Services, not the City. The City asserts that Children's Protective Services is not associated with the City; rather, "is a division within the Michigan Department of Health and Human Services responsible for investigating allegations of child abuse and neglect." City Br. in Supp. Mot. to Dismiss at 5. Hardy does not contradict this point in his briefing on the City's motion to dismiss, <u>see</u> Pl. Resp. to City Mot. to Dismiss (Dkt. 30), and his amended complaint contains no allegations suggesting that the City has any control or authority over agents of the Michigan agency, <u>see</u> Am. Compl. at PageID.103–104. There is no merit to Hardy's suggestion that the City is liable for constitutional violations committed by an employee of Children's Protective Services.

### B. Florida's Objections

In the magistrate judge's view, Hardy plausibly alleged that, "by exposing Hardy as the one who reported his neighbors to Child[ren's] Protective Services in an obvious manner, Florida increased the risk of a danger that did not previously exist to Hardy," and thus, he has sufficiently pleaded a state-created danger claim. R&R at 30. The R&R recommends a finding that the constitutional right allegedly violated was clearly established, which would defeat Florida's qualified immunity defense. Id. at 30–31.

Florida presents multiple challenges to the recommended denial of qualified immunity. See Florida Obj. at 3–11. In part, he distinguishes this case from cases where plaintiffs had plausibly pleaded state-created danger claims by noting that—when Florida first interacted with Hardy and Hardy's neighbor—Hardy already had "an ongoing dispute with his neighbor[]." Id. at 7 (citing Am. Compl. at PageID.101–104). Florida submits that his "interview did not change the fact that the neighbor and Plaintiff continued to interact inappropriately with each other using profanity and threats." Id. The habit of Hardy and his neighbor to "use salty and offensive language . . . existed before Florida investigated." Id. at 8. Indeed, Florida notes correctly that "the neighbor threatened to kill Plaintiff's 'mf dog' before Florida was even involved in the case." Id. (quoting Am. Compl. at PageID.101).

The Court agrees that it must dismiss the state-created-danger claim against Florida because Hardy has failed to plausibly plead that Florida "increased the risk that the plaintiff would be exposed to an act of violence by a third party." Cartwright, 336 F.3d at 493. To plead a state-created danger, "the plaintiff must have been safer before the state action than he was after it." Lipman v. Budish, 974 F.3d 726, 744 (6th Cir. 2020) (punctuation modified, emphasis in original). It is not sufficient to allege that an official who "intervene[s]" in a dispute between private

10

individuals is liable for a state-created danger if the plaintiff faced the same "pre-existing danger" both before and after the official allegedly acted. Walker v. Detroit Pub. Sch. Dist., 535 F. App'x 461, 466 (6th Cir. 2013) (affirming both dismissal for failure to state plausible claim and grant of summary judgment to defendants on state-created danger claims based on school officials (i) merging schools and thus putting rival gangs in close proximity and (ii) intervening to break up fight between students before one participant in fight returned to school with gun and opened fire).

In this case, Hardy alleges that, on June 24, 2022, his neighbor "deliberately pick[ed] a false fight" with Hardy by threatening to shoot Hardy's dog, allegedly stating: "if your dog bite[s] me I'm going to burst her mf head." Am. Compl. at PageID.101. Later that date, the neighbor turned toward Hardy "holding a semi-automatic machine gun [which] he then pointed . . . directly at [Hardy] and said[,] 'I will kill you and your mf dog.'" Id. (punctuation modified). These threats prompted Hardy to call 911; Essix arrived, and after he left, the neighbor made a similar statement to Hardy: "I am going to kill you, your dog, and if [I] can't [I] will get someone else to do it." Id. at PageID.102 (punctuation modified).

Then came the state action that allegedly increased the risk of harm to Hardy. Hardy showed the footage of the neighbor's alleged child abuse to Florida, and Florida showed the footage to the neighbor. Id. at PageID.103–104. Hardy submits:

> So displeased with what they saw on the video . . . , the gunman [i.e., the neighbor] stated[:] Yeah we saw the video you gave to [Children's Protective Services] and because of that . . . he was going to kill plaintiff, his dog, and burn his mf house down, and if he couldn't do it he would get someone else too [sic].

Am. Compl. at PageID.104 (punctuation modified).

Hardy's neighbor continued to engage in the same verbally abusive behavior after Florida left the scene; Hardy pleads that, two days later, on June 26, 2022, Hardy again called 911 "regarding the same gunman [as to] his continued threats and harassment." Id. at PageID.102.

11

Nowhere does Hardy allege that his neighbor in fact shot at Hardy, shot at Hardy's dog, made efforts to burn down Hardy's house, or obtained the services of someone else to do so.

Hardy's allegations establish that he was in a running dispute with his neighbor, such that his neighbor regularly made threats to Hardy but did not—on the face of the pleadings—ever act on those threats. This contentious relationship existed before Florida spoke to the neighbor, and it existed after Florida spoke to the neighbor. Hardy has not plausibly alleged that he was "safer before the state action than he was after it." Lipman, 974 F.3d at 744 (punctuation modified, emphasis in original). Rather, the same "pre-existing danger"—i.e., the verbal threat that the neighbor would physically harm Hardy or his property—persisted regardless of Florida's alleged actions. Walker, 535 F. App'x at 466.

On these pleadings, Hardy has not plausibly alleged that Florida's actions increased the danger posed by a private actor. See Treesh v. Cardaris, No. 10-cv-437, 2010 WL 3603553, at *1, *3 (S.D. Ohio Sept. 9, 2010) (finding that plaintiff had not plausibly pleaded state-created danger claim by alleging that nursing assistant obtained and shared his medical information for purpose of "caus[ing] damages and/or death" where any increase to risk of harm was "unsupported"); see also Barber v. Overton, 496 F.3d 449, 450–451, 456–457 (6th Cir. 2007) (granting summary judgment to defendant prison official who inadvertently distributed corrections officers' personal information to prisoners, prompting prisoners to "threaten[] and taunt[]" them, where prisoners had "other methods of learning where [the officers] reside[d]" and where "plaintiffs [did] not allege that this information allowed the prisoners to discover information that they would have been unable to otherwise").

Accordingly, the Court sustains Florida's objections, denies the R&R's recommendation to deny Florida's motion to dismiss, and grants Florida's motion to dismiss.[7]

### III. CONCLUSION

For the reasons explained above, the Court (i) accepts in part and denies in part the recommendations in the R&R (Dkt. 41), (ii) denies Hardy's objections (Dkt. 45) (iii) grants the City's motion to dismiss (Dkt. 28), (iv) sua sponte dismisses other Defendants related to the City, (v) denies Hardy's motion to file an amended complaint (Dkt. 33), (vi) sustains Florida's objections (Dkt. 43), and (vii) grants Florida's motion to dismiss (Dkt. 27).

SO ORDERED.

Dated: August 7, 2023　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[7] Because the Court finds that Hardy has failed to state a plausible claim against Florida, the Court does not reach Florida's argument that he is entitled to absolute immunity. See Florida Obj. at 2–3.